OPINION OF THE COURT
 

 Rosenblatt, J.
 

 The case before us involves the remedy for a tenant’s breach of an agreement to obtain liability insurance for the landlord’s benefit.
 

 As occupant of a floor in a Manhattan office building, Petrofin (the tenant) agreed to maintain comprehensive general public liability insurance on the premises and name the landlord as an additional insured.
 
 [1]
 
 Although the tenant took out a policy, it failed to include coverage for the benefit of the landlord. Plaintiff (tenant’s employee) was injured on the ‘premises and sued the landlord, who then brought a third-party action against the tenant for breach of the lease. Supreme Court granted the landlord’s summary judgment motion, holding that the tenant breached its agreement to add the landlord as a named insured. Concluding that the landlord had its own liability insurance, the court limited the landlord’s damages to the costs of “maintaining and securing” the insurance policy for the year that included “the date of the accident.”
 

 A divided Appellate Division modified, holding that the landlord should recover not only the purchase cost of the insurance but also certain out-of-pocket expenses “arising out of the liability claim and not covered by the substitute insurance procured by the landlord.” (268 AD2d 121, 128.) The majority
 
 *114
 
 stated that these additional damages could include, for example, any co-payment, deductible or rate increase in the landlord’s insurance. The court concluded that under contract law this relief gives the landlord the benefit of its bargain without holding the tenant liable for the entire loss. It also held that the common-law collateral source rule would not apply and that any potential insurance recovery inuring to the landlord should be counted in calculating its contract damages.
 

 The two dissenting Justices, on the other hand, would have awarded the landlord all damages resulting from the tenant’s failure to acquire insurance, including the full amount of the loss on the underlying personal injury claim, along with defense costs. They contended that, under the common-law collateral source rule, any insurance the landlord may have had should not be considered in determining its damages.
 

 The only question before us — and the source of the disagreement at the Appellate Division — is the measure of damages recoverable by the landlord. We agree with the majority that the landlord’s recovery should be limited to out-of-pocket damages caused by the tenant’s breach.
 

 Lease provisions by which the tenant covenants to procure insurance and name the landlord as an additional insured are generally valid and enforceable
 
 (see, e.g., Kel Kim Corp. v Central Mkts.,
 
 70 NY2d 900, 901;
 
 see also,
 
 2 Dolan, Rasch’s Landlord and Tenant § 21:7, at 145-146 [4th ed]). A landlord who has no knowledge of a tenant’s failure to acquire the requisite insurance and is left uninsured may recover the full amount of the underlying tort liability and defense costs from the tenant
 
 (see, Marconi Wireless Tel. Co. v Universal Transp. Co.,
 
 194 App Div 272, 273,
 
 affd
 
 233 NY 581;
 
 see generally,
 
 2 Dolan, Rasch’s Landlord and Tenant § 21:11, at 148 [4th ed]). Here, however, the landlord procured its own insurance covering the risk. The landlord would have us apply the same measure of damages — the full amount of the settlement and defense costs in the underlying tort claim — even though it had acquired its own insurance. Citing
 
 Mavashev v Shalosh Realty
 
 (233 AD2d 301, 302) and
 
 Richfield Props. v Galaxy Knitting Mills
 
 (269 AD2d 516, 517), the tenant contends that the Appellate Division was correct in limiting the landlord’s damages to its out-of-pocket expenses (notably, the premiums and any additional costs it incurred such as deductibles, co-payments and increased future premiums). We agree. The landlord obtained its own insurance and therefore sustained no loss beyond its out-of-pocket costs
 
 (see, Marconi Wireless Tel. Co. v Universal
 
 
 *115
 

 Transp. Co., supra,
 
 at 273;
 
 Rodriguez v Nachamie,
 
 57 AD2d 920). Accordingly, it may not now look to the tenant for the full amount of the settlement and defense costs in the underlying tort claim.
 

 Contrary to the landlord’s contention,
 
 Kinney v G. W. Lisk Co.
 
 (76 NY2d 215) does not require a different result. In
 
 Kinney,
 
 a subcontractor covenanted to procure insurance for the benefit of a general contractor. The subcontractor asserted that such an agreement freed the general contractor from its own negligence, in violation of General Obligations Law § 5-322.1
 
 (Kinney v G. W. Lisk Co., supra,
 
 at 217). We rejected that argument and concluded that the subcontractor, owing to its failure to procure insurance to cover the general contractor, was liable for all the resulting damages including the general contractor’s liability to plaintiff
 
 (Kinney v G.
 
 W.
 
 Lisk Co., supra,
 
 at 219). The question of whether resulting damages could be minimized by any insurance the general contractor had obtained was not raised by the parties or considered by the Court.
 

 The dissenters at the Appellate Division would have applied the common-law collateral source rule to preclude reduction of the landlord’s damages. We disagree. Under this rule, “a personal injury award may not be reduced or offset by the amount of any compensation that the injured person may receive from a source other than the tortfeasor”
 
 (Oden v Chemung County Indus. Dev. Agency,
 
 87 NY2d 81, 85;
 
 see also, Iazzetti v City of New York,
 
 94 NY2d 183, 187 [citing
 
 Bryant v New York City Health & Hosps. Corp.,
 
 93 NY2d 592, 605]). This concept has been part of New York’s common-law tort jurisprudence for well over a century
 
 (see, e.g., Drinkwater v Dinsmore,
 
 80 NY 390, 392;
 
 Briggs v New York Cent. & Hudson Riv. R. R. Co.,
 
 72 NY 26, 32).
 
 [2]
 
 The common-law collateral source rule is designed to ensure that tortfeasors pay for all damages caused by their tortious conduct.
 
 [3]
 

 The landlord argues that we should apply the rule in this breach of contract case and hold that its damages should not
 
 *116
 
 be reduced by virtue of any insurance proceeds it stands to receive. Under settled contract principles, however, the landlord — the only appellant before us — is entitled to be placed in as good a position as it would have been had the tenant performed. Its recovery is limited to the loss it actually suffered by reason of the breach
 
 (see,
 
 Restatement [Second] of Contracts § 344 [b]; § 347, comment e;
 
 see also,
 
 3 Dobbs, Remedies § 12.2 [1], at 22-23 [2d ed]).
 

 Contrastingly, the common-law collateral source rule is inherently a tort concept. It has a punitive dimension
 
 (see,
 
 4 Harper, James & Gray, Torts § 25.22, at 655 [2d ed]) that does not comport with contract law.
 
 [4]
 
 Contract damages, unlike tort damages, are limited to the economic injury caused by the breach. Moreover, contrary to the landlord’s suggestion, we need not invoke the common-law rule as an incentive for compliance. A tenant obligated by contract to procure insurance will have little reason to forego compliance and tag along at its peril, hoping that the landlord obtained its own adequate coverage. The tenant’s exposure to liability without insurance, not to mention the risk of eviction, is disincentive enough to all but the most reckless. We therefore agree with the Appellate Division majority that the common-law collateral source rule does not apply in this case.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed, etc.
 

 [1]
 

 . The agreement was between Petrofin, as sublessee, and Bantam Doubleday Dell Publishing Group, Inc., as sublessor. Third-party plaintiff-appellant 666 5th Avenue Limited Partnership was the landlord and Sumitomo Realty and Development Corp. its general partner. For purposes of this decision, we refer to them jointly as the landlord and to Petrofin as the tenant.
 

 [2]
 

 .
 
 See generally,
 
 Annotation,
 
 Compensation From Other Source As Precluding or Reducing Recovery Against One Responsible for Personal Injury or Death,
 
 18 ALR 678, 683-686, updated in 95 ALR 575, 579.
 

 [3]
 

 . The common-law collateral source rule was modified by statute (CPLR 4545) to reduce damage awards by the amount of collateral source payments in certain instances
 
 (see,
 
 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4545.01; Siegel, New York Prac § 180, at 296-297 [3d ed];
 
 see also,
 
 Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C4545:l, at 344 [providing history and background of CPLR 4545 and its modification of the common-law rule]).
 

 [4]
 

 .
 
 See generally, Midland Mut. Life Ins. Co. v Mercy Clinics,
 
 579 NW2d 823, 830 (Iowa 1998) (noting that the majority of jurisdictions have concluded that the collateral source rule should not be applied outside the realm of tort actions), citing
 
 Centon Elec, v Bonar,
 
 614 So 2d 999, 1004 (Ala 1993);
 
 Grover v Ratliff,
 
 120 Ariz 368, 370, 586 P2d 213, 215 (1978);
 
 Patent Scaffolding Co. v Simpson Constr. Co.,
 
 256 Cal App 2d 506, 511-512, 64 Cal Rptr 187, 191 (1967);
 
 Amalgamated Tr. Union Local 1324 v Roberts,
 
 263 Ga 405, 407-408, 434 SE2d 450, 452 (1993);
 
 American Fid. Fire Ins. Co. v General Ry. Signal Co.,
 
 184 Ill App 3d 601, 540 NE2d 557 (1989);
 
 Corl v Huron Castings,
 
 450 Mich 620, 544 NW2d 278, 286 (1996);
 
 Hurd v Nelson,
 
 714 P2d 767, 771 (Wyo 1986).