[833 NE2d 1213, 800 NYS2d 538]

CARLO ALBANESE et al., Respondents, v CITY OF NEW YORK et al., Appellants, et al., Defendants.

Argued June 1, 2005; decided July 6, 2005

### POINTS OF COUNSEL

*Smith Mazure Director Wilkins Young & Yagerman, P.C.,* New York City (*Mark D. Levi* of counsel), for appellants. The Appellate Division, First Department erred in not dismissing plaintiffs-respondents' complaint against defendant-appellant, City of New York, and erred in finding it to be an owner under Labor Law §§ 200, 240 (1) and § 241 (6). (*Deloach v City of New York,* 258 AD2d 384; *Nowlin v City of New York,* 81 NY2d 81; *Gregorio v City of New York,* 246 AD2d 275; *Astin v City of New York,* 278 AD2d 440; *Nunez v City of New York,* 177 AD2d 394; *Michetti v City of New York,* 184 AD2d 263; *Farrell v Town of N. Salem,* 205 NY 453; *People ex rel. Carlisle v Board of Supervisors of Onondaga County,* 217 NY 424; *Willis v City of New York,* 107 AD2d 747; *Allen v Village of Holley,* 226 App Div 294.)

*Schneider, Kleinick, Weitz & Damashek,* New York City (*Charles J. Nolet, Jr.* of counsel), for respondents. Defendant-appellant is, as a matter of controlling law, an "owner" of this arterial highway work site for purposes of the Labor Law. (*Nowlin v City of New York,* 81 NY2d 81; *Matter of City of New York v State of New York,* 98 NY2d 740; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Quigley v Thatcher,* 207 NY 66; *Glielmi v Toys "R" Us,* 62 NY2d 664; *Adimey v Erie County Indus. Dev. Agency,* 226 AD2d 1053, 89 NY2d 836; *Kane v Coundorous,* 293 AD2d 309; *Bart v Universal Pictures,* 277 AD2d 4; *Clute v Ellis Hosp.,* 184 AD2d 942; *Sinzieri v Expositions, Inc.,* 270 AD2d 332.)

### OPINION OF THE COURT

Chief Judge KAYE.

Plaintiff Carlo Albanese, a carpenter, was at work on a scaffold suspended from a Cross Bronx Expressway ramp over the Bruckner Expressway in the City of New York when a tractor-trailer heading east on the Bruckner struck the bottom of the scaffold. Plaintiff was thrown into the air and fell back down onto the scaffold.

As of the date of the accident, the expressways were under construction as part of a two-year New York State-initiated project that included the comprehensive resurfacing and rehabilitation of the Cross Bronx-Bruckner Interchange, Cross

Bronx Expressway, Throgs Neck Expressway-Hutchinson River Parkway resurfacing, and joint restoration and replacement of the Throgs Neck Expressway Bridge over the Cross Bronx Expressway. Through its Department of Transportation, the State contracted for the project with Defoe Corporation, general contractor, and Haks Engineers, P.C., construction manager. The City was not a signatory to the contracts; it did not participate in the selection of, or negotiation with, the contracting parties; and it did not perform any of the work. The City, however, issued work permits for the project, granting the State the authority to "enter upon and restrict the flow of traffic on the Cross Bronx/Bruckner [Expressway] Interchange . . . for the purpose of reconstruction, resurfacing, and highway improvement together with all work incidental thereto," subject to stipulations imposing conditions on lane closures, traffic flow, storage of materials and the like. The City reserved the right to cancel the permits at any time.

Alleging that the scaffolding was too low, plaintiff and his wife commenced this damages action for violations of Labor Law §§ 200, 240 and 241, as well as common-law negligence, against the City of New York, the Triborough Bridge and Tunnel Authority, Haks Engineers, Haks Construction Management, Inc. and the truck lessors, lessees and driver. (Plaintiffs separately brought a similar action against the State in the Court of Claims.) The City sought summary judgment, arguing that as a matter of law it was not an "owner" of the work site for purposes of Labor Law liability.

Supreme Court denied the City's motion for summary judgment, finding issues of fact as to all claims. A divided Appellate Division modified, holding that, as a matter of law, the City was an owner within the meaning of the Labor Law; two dissenting Justices agreed with Supreme Court that the issue was (at the least) one of fact. The Appellate Division granted leave to appeal to this Court on a certified question. We now reverse, concluding that the City was not an owner for purposes of the alleged Labor Law violations.

Labor Law §§ 240 and 241 impose absolute liability on "[a]ll contractors and owners and their agents" for any breach of a statutory duty to provide safety measures that proximately cause injury (see Labor Law § 240 [1]; § 241). Plaintiffs contend that the City is an owner because the accident occurred on an arterial highway and therefore, under Highway Law article XII-B, the City and State shared responsibility for the work

site. Further, plaintiffs argue that the City actually functioned as an owner on the project, by reviewing plans and specifications for the work, attending meetings, inspecting the site, issuing work permits and retaining authority to suspend or terminate the work.

*Nowlin v City of New York* (81 NY2d 81 [1993]) is a centerpiece of plaintiffs' argument. While an automobile accident (not a Labor Law) case, *Nowlin* also concerned the scope of the City's responsibility on arterial highways—roadways running through the city that connect to state highways. Our analysis began with article XII-B of the Highway Law (Highway Law §§ 349-b—349-f), enacted in 1944 to create a state-wide system for the use of state and federal funds in the construction and modernization of arterial highways.

As we explained in *Nowlin*, arterial highways by definition implicate both state and local interests, and the statute pays deference to both. It provides that the State may expend state or federal funds for the purchase, design, construction or reconstruction of arterial routes and thereby may attain ownership of them (Highway Law § 349-c [1], [5], [6]). The State, however, can proceed with construction only "after designs, plans, specifications and estimates of cost thereof have been completed and approved by the city and the commissioner of transportation, and the necessary property has been acquired" (Highway Law § 349-c [3.4]). Once state work is complete, "the commissioner of transportation shall transfer jurisdiction to the city of New York" (*id.*).

The separation between city and state responsibility, however, is not absolute, even during construction. Recognition of city authority—both the power to regulate its affairs, and the obligation to maintain its property—is a theme sounded throughout the history of article XII-B (*see Nowlin*, 81 NY2d at 87-88). For example, during state work, the City may itself initiate construction projects and thus take on the function of an owner (Highway Law § 349-c [3.6]); by the same token, the State may—as in *Nowlin*—retain maintenance responsibilities even after transferring jurisdiction to the City.

Two related, significant facts distinguish this case from *Nowlin*, where we sustained a damages award against the City for an automobile accident on an arterial highway, the Henry Hudson Parkway. In *Nowlin*, years before the accident, the State had completed construction and transferred jurisdiction to the

City. Here, state construction was ongoing at the time of plaintiff's injury. In *Nowlin*, moreover, where negligent placement of warning signs allegedly created a traffic hazard that caused plaintiff's injury, it was the City that had actually planned and placed the signage on the parkway. Here, the City exercised no comparable function with respect to the scaffolding that was part of the State's rehabilitation of the Cross Bronx Expressway-Bruckner Interchange. The State was in charge of the project, and the City had no say as to which contractor or consultants were hired. The City did not perform any of the work. The City's role was largely confined to its regulatory responsibilities arising out of its work permits. That limited involvement cannot subject the City to absolute liability under the Labor Law for an injury allegedly resulting from the height of a scaffold placed by state contractors.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, the certified question answered in the negative, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order, insofar as appealed from, reversed, etc.